Good morning. May it please the Court, Kurt Hermanson on behalf of Mr. Juanchi. Your Honor, there are two claims in this case, and I'm prepared to argue both. Unless the Court wants to hear a certain claim first, I would start with the ineffective assistance of counsel claim. Let me ask you this first question. Why should we hear that claim in terms of the development of the record in this case? Obviously, we only hear those types of claims if there is a sufficiently developed record or if there is such obvious ineffective assistance. I don't think you're relying upon the latter basis. I think you're saying, at least from my understanding in briefs, that it's really about the development of the record. So why do you think the record is fully developed for us to decide that issue? Sure. Your Honor, the record is fully developed and shows that counsel failed to investigate and failed to have years, really, to get ready for sentencing. The indictment in this case was in 2010, and the first sentencing hearing was in June of 2013. And yet, defense counsel did absolutely nothing to get documents and instead misunderstood her role and said that, well, it's the government's burden. I don't need to get anything on my own. Let's say that it was deficient, not to try to come up with anything else. By the time the hearing rolled around, given the evidence that the government had, I don't think that you can show prejudice because the losses are the losses. I think the IAC claim really goes to why the continuance was sought. And as to that, I see the record as being insufficiently developed because counsel consulted with her client, and we don't know what they said. The client could have said, well, there's no more losses. Seek the continuance. Our chances can only improve from here. We just don't know what was said during that conversation. So why is that gap in the record not important? Because it doesn't matter what the defendant said. This is a tactical decision that the attorney has to make, not the client. It's not about testifying or whether to go to trial or plead. He had already pled guilty, and the attorney needs to advise the client properly, and to advise the client properly about whether to seek the continuance, the attorney has to do an investigation. And the Supreme Court in Wiggins and in Strickland has said that for the attorney to act reasonably, the defense attorney has to do the proper investigation. But let me ask this question. What information do we have about what information was presented to the defendant to help advise his attorney about whether or not to seek the continuance? We don't have a record as to what discovery the defendant may have received or not received as related to the loans, the defendant's ability to assess which specific loans may have had credits against them or not. Why isn't that an important part of the record? Because, for example, if you were to say that the lawyer also never sent copies of the loan documents during the pre-plea period or other period, that might be important information, but we don't have any of that, right, do we? We don't have that, but I think what we need to focus on is what was the defense attorney acting rationally. And the record shows that her decisions were irrational. The arguments that she made were not supported by the law whatsoever. So everything that she wanted to do to try to mitigate the loss amount was irrational and it could only go up. And you have on the record the assistant United States attorney saying, I only submitted four loans. I have 26 others that I can submit. And so in light of that, it's only going to go up. She was wrong about the law. She failed to investigate the law. She failed to investigate the facts. I mean, the facts prove that it doubled, practically doubled the amount of loss. But, counsel, what would be the harm in deferring this until there's an opportunity for the attorney to give an affidavit and the facts can be explored more completely? What's the harm in that? Well, a 2255 can certainly be filed. So maybe I should move on to the other argument. Perhaps. If the court... So the other argument is regarding the two-level increase for means of identification. And so basically what this two-point increase involves is you steal or don't have authority to take someone's means of identification and you turn it into some other means of identification, such as a loan number. But, counsel, isn't obtaining consent by half-truth no different than stealing? We don't have any cases saying that. And the statutory interpretation of the guidelines don't support that because it's... I mean, because the issue is authorized use of the information, right? How can it be authorized if the person authorizing it doesn't have full information about what the information, what their personal data is going to be used for? Right. I think I understand the question, and it's really parsing out whether this two-level increase applies, is what were they going to use the information to obtain? What means of identification were they going to breed or create? And here, the means of identification that they were going to breed or create, everyone agrees, is a loan number. That loan number would be the same whether they're cosigners or the principal on the loan. But the authorization isn't the same. The problem with your argument for me is that if you authorize someone to charge $5,000 on your credit card and that person charges $50,000 on your credit card, they've exceeded your authority. And I look at this similarly. If you authorize someone to use your name to get a certain type of loan and they get a different one, then it's not the authorized use. I agree with everything you said. Okay. But the way it's distinguishable is it's not like he said, we're going to get a loan for $5,000 and got a loan for $50,000. They said, we're going to use your identification to get a loan number. They used the identification to get a loan number. A loan number for what? For what purpose, though? Right. For a home. And the difference is, are you a cosigner on that loan with that loan number, or are you listed as a principal? They were told that the loans were going to be used to help people refinance their property, homeowners who were in trouble to refinance the property. The names were actually used to buy homes, not to help bail out people who were behind on their loans. You don't see that as a difference? It definitely is a difference. But when we look at the text, the context, the history of the guideline and the rule of lenity, the history talks about taking it without the person's knowledge. Well, here they knew exactly what was happening. They didn't know exactly what was happening. As far as getting a loan. But did they know that the loan would be to purchase new homes versus helping out distressed owners to refinance properties? Is there any indication in the record that the individuals were complicit in getting money for new homes? So it wasn't for new homes. It was for those homes. Which homes? The homes that were in distress. So the loans were for those homes. But instead of putting, yeah. Not for the people who needed help with the loans. It was simply going to be used for the people whose information the defendant had obtained through this representation, right? Correct. I mean, the bottom line really is that the enhancement doesn't apply because the identity holders authorized the defendant to use their identifying information to obtain bank loan numbers. And so I think if the focus. So anything beyond that that they may not have known about doesn't matter. That's your argument. That's fraud. I admit that's fraud. But we have to focus on did they create a driver's license? Did they create a credit card? Did they create? No. You're focusing on that. I'm focusing on the authorization piece of it. Because to me, you are confining what was authorized very narrowly. I am. And I'm not sure that I follow you. Right. That doesn't resonate with me. I agree, Your Honor. I am being narrow because that's what the law requires for criminal statutes. When we are looking at a criminal statute and a sentencing guideline is a criminal penalty, we have to narrow it. But what law can you point us to that says in terms of authorization that the issue of authorization or not being authorized is so narrowly drawn that if you are told part of the truth, even if not the full truth, that doesn't constitute unauthorized use? I understand your argument is you're trying to draw a very narrow interpretation of that. The question is where can we look to such an interpretation by this court, even other courts that find that narrow a definition of unauthorized? Well, you start with the text. And the text says the unauthorized transfer or use. Stop there. Unauthorized. That's where I think you're losing me because you're going right past the unauthorized part of it and to skip to the means part. But we're focusing on the unauthorized, the meaning of unauthorized, the general use of unauthorized. Correct. And what I'm saying is when looking at the text and the context, what does the word unauthorized mean in this context? Unauthorized means that you're going to use the information. So let's say I give you my social security number and you go get a credit card. When I said I'm giving you my social security number so you can get a loan. But then you get a credit card instead. That's a completely different transaction. You've opened a credit card in my name. I never authorized that. That's one unauthorized. But there are lots of ways to engage in unauthorized behavior. So that's just one. That doesn't necessarily mean that's the universe of unauthorized. Correct. Here the two words have to be read together, authorized or unauthorized, and means of identification. Here the means of identification is only one thing, a loan number. That is the means of identification. So when reading those two things together, loan number and unauthorized, that's how we win under a strict interpretation of the statute is that they authorized a loan number. All right. Thank you, counsel. You've exceeded your time. We'll give you a minute for rebuttal. We're here from the government. Good morning, Your Honors. May it please the Court. Allison Westfall-Kong for the United States. So beginning with the ineffective assistance claim, in addition to the fact that the record is not sufficiently developed to permit review at this claim, I want to suggest to the Court that there is at least one tactical reason why defense counsel may have sought the continuance that she did. And so I think it's important to kind of discuss how this issue of downstream lenders came into play. So after the defendant filed his sentencing position, the government filed its sentencing position, where it represented that it was prepared to prove loss for the purposes of the guidelines, but it was not prepared to prove loss for the purposes of restitution. And obviously loss under the guidelines is a more simplistic calculation. Simply the difference between the remaining principle on the loan and the proceeds of any foreclosure sale. Whereas for restitution, particularly under this Court's decision in Young, which governed at the time of the sentencing hearing before it was partially abrogated by the Supreme Court, it's a much more complicated calculation where the government needs information about whether the loans were sold downstream, how much was paid for the loans by the downstream lenders, and even the fair market value of the collateral at the time that the downstream lenders obtained the loans. So defense counsel could have thought that to the extent that the government has already agreed that it's not prepared for restitution and needs to put off the restitution hearing, and to the extent that the government would be unable to actually prove restitution, actual loss, defense counsel could then make the argument under the 3553A factors that defendants' conduct didn't cause any actual harm. And so even if there was technical loss under the guidelines, it's not as though defendants' conduct threatened the collapse of the financial system. How would that help? Are you saying that that argument would then help defense counsel argue for a downward variance? Yes, either a downward variance or under... It's pretty unusual when the government stands up and says, hey, I've got a lot more loss, to then ask for continuance so that the government can prove up a lot more loss. I'm not sure we can reach that issue on the record that we've got because there may be strategic reasons that counsel discussed with her client, but that's a pretty unusual situation. Correct, and the government would agree with that. But I guess even if the government was able to ultimately submit additional loan information, I think it's notable in this case that there was no restitution ordered. So the government represented that it was too complex, and so while... Let me ask this, counsel. How would that justify the failure to even investigate in 13 months any issue with respect to what the actual loss amounts are? How is it effective, having not looked at or investigated issues, to request a continuance when the government is telling you your client is likely to receive a higher sentence? And even though the record may not be fully developed, the defense lawyer's statements or misstatements about the law and what happened below are pretty straightforward. What justifies not doing any investigation at all? Well, I don't think the record shows that she didn't do any investigation at all. She filed four sentencing positions, hundreds of pages of exhibits. The record shows that she had an investigator appointed to locate and interview potential witnesses. She attaches many pages of checks that she argued would demonstrate that the principal payments were actually paid. So it doesn't reflect that she did no investigation. I think the narrow issue is, should she have done more investigation into this downstream lender issue? But I mean, at the point at which she requests the continuance, we have no information that she had any reason to believe that there would be a lower loss amount or the government couldn't prove their higher loss amount, other than her misstatements about what the law would be at that given point in time. She had reason to believe that the government wouldn't be able to prove restitution. And so I think she could have argued that if this is a case that doesn't involve actual loss and actual harm to any individual bank, then perhaps the district court will view it as mitigating circumstances, even if under the guidelines, he would still get high guidelines exposure. Also, I would just note for the court that the only record before the court is that the information about downstream loans was very limited and very difficult. As the government explained in its initial sentencing position at government's excerpts of record 138 to 139, and then again represented to the court at the hearing, and that's at government's excerpts of record 327, 329, and 340. This was a very difficult issue, and it was difficult to obtain information because many of the lenders had gone out of business and the loans had been bundled and ultimately securitized. And so I also don't think that the record that we have reflects that there's anything defense counsel could have done to obtain information about this specific narrow issue of downstream loans. Well, doesn't that just further complicate the issue of why she requested the continuance in the first place? If she'd gone through discovery initially, she would have known that at the time she requested the continuance. All the more reason not to request it at the initial time of sentencing, right? Well, I guess I would just put the caveat that the government, at this point the government has already agreed that the restitution hearing has to be put off. And the government's already representing that it's going to seek out this additional information for purposes of restitution. So I think defense counsel could reasonably believe that to the extent that the government is already going to be locating this information, to the extent that it could demonstrate that her client's conduct didn't cause actual loss, it may have been in his best interest to continue. Were you at the AUSA below? I was not. He has since left the office, but hopefully I can answer any questions. Do you know if by the time of the sentencing hearing he had turned over information regarding the other loans that he had referenced? Well, he did. So he did turn over records that were obtained from Financial Plus, the company that, you know, Defendant was the vice president of. And those records had status reports of all these different loans that I think led to the 30 fraudulent loan statement in the factual basis of the plea agreement. Whether he had obtained records from the specific lenders, and again, some of the lenders had gone out of business, I do not know, but the company's own records reflected information about those loans. So those were the documents that were available for the first sentencing hearing. And then after the first sentencing hearing, additional documents were available from some of the lenders who were still in business who had records regarding the additional loss amount of over $2 million. Correct. Okay. That's correct. Counsel, you only have three minutes left. Could you address the other issues? Certainly, Your Honor. So defense counsel said something interesting in his argument. He started it out by saying that Defendant didn't have the authority to take. And I think it's important to recognize that this guideline talks about unauthorized use, not unauthorized taking. So the only issue is, did the Defendant and his co-conspirators use any means of identification in an unauthorized way to obtain another means of identification? Here, the bank loan. And I think there are two independent reasons why this is true. And the first reason is one that the government alluded to in a 28J letter, which is that the government submitted evidence that was uncontradicted that signatures on loan applications were forged. And this court has held in United States v. Blix that a signature constitutes a means of identification. Because there's no evidence in the record to suggest that those signatures were authorized, that in itself constitutes the unauthorized use of a means of identification on a loan application for purposes of getting a bank loan. And then independently, of course, as the government has kind of laid out in its brief, the government would submit that none of this was authorized in the sense that these straw borrowers, who are often unsophisticated, were told that this was just about temporarily lending their credit to help distressed homeowners. They were told that their information would be removed from the loan after a year, that they would be temporary co-signers. They were never told that they would actually be purchasing the houses. They were never told that they would be the primary individuals on that loan. And so defendants' argument that the only thing that matters is that they approved of that specific form of means of identification, I think is simply overbroad and both defies the plain language of the guideline and also common sense. Because then under defendants' argument, to the extent that you submit your information to a loan officer for the purposes of a bank loan, and then they use that information to obtain a bank loan in someone else's name, under defendants' argument, the mere fact that it's a bank loan would mean that it was authorized. And obviously that would defy the purpose of the guideline and also the plain language. So the government submits that the district court properly applied the enhancement. And just for the court's information, the evidence in the record regarding the forged signatures can be found at government excerpts of record 158, that's victim Ms. Orellana, government excerpts of record 166, which is Ms. Ponce, and then there's also an interview report that can be found at government excerpts of record 82, where an employee of the company talks about how the defendant would forge individual signatures. Thank you. Rebuttal. So defense counsel was ineffective because there was no legal or factual support for the positions that she took. Why don't you actually address the issue of the strategic reason that under 3553A what could be argued was that, given the issues of the sort of mortgage meltdown and things like that, that the defense attorney could have thought, well, if we're able to get a low restitution amount, we can argue to the court that the guidelines don't accurately reflect the true nature of the loss to the banks, particularly if they may have even indirectly been involved with some aspect of the have been involved with the resale of loans or some aspect of the misrepresentation of information. Why wouldn't that be a good strategic decision? In excerpts of record 1ER38 through, I think, 42, the district court tells her very clearly these are separate things. Restitution and loss amount are totally separate. We are going to have a loss amount hearing, and that is going to determine the guidelines in this case and she's saying, and the court tells her, at the end of the day are you going to be able to get below $1 million if you have 30 other properties, 26 other properties? Her response, I don't know, Your Honor. I don't know. I haven't done my homework, basically. There are 30 properties here, the court says, and then if the amount of loss is far in exceeding $1 million, that's going to be considered by the court. He tells her over and over again, trying to talk her out of doing this, if you want a more thorough hearing on the 30 properties, then you should have one, and then she says, well, we're going to have to have a restitution hearing anyway, and the court schools her and says, no, we are going to do a loss calculation separate from the restitution. And so, I mean, she's told these are two totally separate things, and do you really want to go forward with this hearing? All right. Thank you, counsel. You've exceeded your time. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Bastian, Pregerson, Callahan